## HOUSTON & WEST TEXAS OIL CO. v. STOREY et al.

### No. 3672.

Court of Civil Appeals of Texas. El Paso.

May 12, 1938.

Rehearing Denied June 2, 1938.

Joseph A. Beyer, of Crane, and Elliott Cage, J. E. Winfree, and W. C. Perry, all of Houston, for appellant.

Lawrence Sochat, of Houston, Henry Russell, of Pecos, E. D. Smith, of Crane, and Stubbeman, McRae & Sealy, of Midland, for appellees.

WALTHALL, Justice.

Appellees, W. M. Storey, J. F. Friebele and C. C. Duffey, a copartnership doing business under the firm name of the Storey-Friebele-Duffey Oil Company, brought this suit as plaintiffs against the Houston & West Texas Oil Company, a Texas Corporation, H. B. Masterson, Mrs. Ray F. Sharp, a feme sole, and F. W. Gilland, as defendants.

The petition of appellees tendered substantially the following facts: On April 3 1926, G. T. McClintic and others, owners

of the south half of Section 206, Block F, G. C. S. D. & R. G. N. G. R. R. Company Survey in Upton and Crane Counties, Texas, made, executed and delivered an oil and gas lease to defendant F. W. Gilland, the lease being in the usual form of such leases, the lease providing for the usual annual rental in lieu of drilling operations, and providing for the payment to the lessors in case of the discovery of oil or gas in paying quantities of ⅛ of such production; the lease was for the term of six years and as long as oil or gas is produced therefrom and is in force and effect; the ownership of said lease passed from Gilland by mesne conveyances to appellees and appellant. On April 20, 1926, the same lessors executed and delivered a like lease to Gilland on the north half of the north half of Section 206, Block F, in the same survey in Upton and Crane Counties, Texas, said lease containing substantially like provisions with reference to rents and royalties, terms and conditions as the other lease mentioned, and which lease passed by conveyance from Gilland to appellees and appellant. The leases provided for assignment by the lessee vesting an interest in the minerals, and after production required the lessee to develop the minerals and pay royalties and protect minerals from drainage by other wells, which right to explore and develop, and which duty was exclusive in the owner of such lease; the leases are in force and passed by conveyances to appellees and appellant, the leases duly recorded, and subject to the interests claimed by the other defendants, stated later; oil in paying quantities has been produced under the terms of the leases; appellees and appellant own the leases in equal interests and have the right to take from the leased lands ⅞ of the oil produced; the other defendants, not involved in this appeal, claim some interest under and in right and title of appellant, and which we will later consider in this opinion.

The leases passed by conveyance to and became the property of appellant, subject to the duties and obligations of an agreement between appellant and the Superior Oil Company and the Keck Investment Company, the prior owners of the leases, and by which agreement appellant agreed, in addition to maintaining the wells then on said lands, to drill three additional wells to the depth stated, and agreed to deliver to the Superior Oil Company and Keck Investment Company ¼ of the lessee's

(then appellant's) ⅞ of the production from oil wells on said land until said companies had received $80,000 in oil at the market price at the time and place of delivery, fixed in the agreement from said ¼. The contract provides for the drilling of said wells.

Appellant, for the consideration of drilling said wells, was to acquire the title to said leases and the producing wells then on said land.

Thereafter, on September 16, 1930, appellant entered into an agreement with C. C. Duffey, by the terms of which Duffey assumed the obligation of appellant to drill said three wells at his own cost and expense for ½ of the rights of appellant under said leases subject to the terms of said leases, the agreement providing that said ½ interest should be clear of the assignment to secure said $80,000 made to the Superior Oil Company and Keck Investment Company, with the further agreement that all additional wells to the three wells should be drilled by the appellant and appellees jointly, ½ to be paid by each party, and the maintenance and operation of the leases should be maintained jointly; that the joint working agreement made appellant and appellee Duffey mining partners; that an account of the working and operating expense should be submitted at the close of the month, and should either party fail to pay his part of the expense within 30 days after such accounts were submitted, the other party should have a lien upon the interests of the defaulting party; thereafter Duffey assigned his interest to appellees. Under the joint operation an item was incurred of $23,934.99, an additional maintenance cost against appellant of $3,616.51, and drilling of wells numbers 6, 7, 8 and 9, the petition setting out the cost of such wells and attaching itemized statements thereof, and asking judgment against appellant and H. B. Masterson for the sum of $60,995.51, with interest at seven percent from February 20, 1937, on $57,370 of said amount, and cost, and judgment declaring a lien upon appellant's ½ interest in said leases and judgment against all defendants' ½ interest and a foreclosure of their interests with an order of sale.

Appellant answered by general demurrer and special exceptions; general denial; denied that the drilling of the wells was necessary; denied that appellant authorized the drilling of the wells or promised to pay the cost thereof; that under the con-

tract for the wells the indebtedness was to be paid out of the oil runs.

Appellees took a non-suit without prejudice as to the $3,616.51 claim, and the case was submitted to a jury upon special issues, and upon which the jury made findings: It was necessary to drill wells 6, 7, 8 and 9 at the time they were drilled to prevent drainage; that appellant was advised by appellees of their intention to drill said wells; that appellees advised appellant of the expenses incurred during the progress of the drilling and completion of the wells; that appellant made no protest or objection to the drilling of said wells; the appellees incurred the following expense in the equipping, drilling and completing the wells: Well No. 6, $31,338.15; well No. 7, $29,296.79; well No. 8, $25,330.48; and well No. 9, $24,230.67; that said expenses so incurred were fair, reasonable, usual and customary charges in drilling, equipping and bringing in oil wells in the locality of said wells.

On the verdict the court rendered judgment in favor of appellees and against appellant in the sum of $58,359.19, with interest of six per cent. per annum from the date of the judgment, and adjudged that appellees have a lien against all the right, title and interest of appellant and H. B. Masterson in said two leases together with all personal property used or obtained in connection therewith, and a foreclosure of said lien, with order of sale.

The court further adjudged that defendants F. W. Gilland and Mrs. Ray F. Sharp have and own an oil payment out of the land described, which oil payment the judgment recites is fixed by a former judgment of the court of date June 14, 1932, in cause No. 218, and which oil payment, the judgment recites, does not commence to operate until certain other payments have been satisfied as shown and referred to in cause No. 218, and that said interests of Gilland and Mrs. Ray F. Sharp are not subject to the claim of appellees in this cause, "but that when said payment out of oil to the said F. W. Gilland and Mrs. Ray F. Sharp commences to operate, same is subject to one half of all maintenance and drilling expenses incurred after that date," in connection with the two leases.

The court overruled appellant's motion for a new trial and appellant appeals.

Appellees, as plaintiffs in error, ask a review by this court of that part of the judgment that was rendered against them and in favor of defendants in error, F. W. Gilland and Mrs. Ray F. Sharp, defendants in the trial court in the other part of that suit, but made defendants in error in this branch of the suit. Defendants in error waive service, and, except as to F. W. Gilland, agree that the statement of facts and transcript filed by appellant in this cause, No. 3672, could be considered as the statement of facts and transcript of plaintiffs in error in their appeal by writ of error to this court, and that such appeals might be consolidated, and a motion to that effect was granted and the two appeals were consolidated and carried under this number.

We will first consider the case on direct appeal.

## Opinion

Appellant submits error in rendering a money judgment fixing and foreclosing a lien upon the physical properties upon said lease; that the judgment should direct its payment out of the oil runs only.

█ The contract between C. C. Duffey and appellant, and thereafter assigned by Duffey to his copartnership, appellees herein, provided that Duffey should assume the obligation of appellant to drill three wells on the lease for ½ of the rights of appellant in the leases, and that all additional wells and the maintenance and operation of the leases should be joint, ½ to each, and that Duffey should have a lien upon appellant's ½ interest to him in what he had assumed to do. This suit and the judgment rendered is for the amount of money claimed to be due Duffey in the performance of his contract with appellant in the work done and the operating expenses incurred and paid by Duffey, or by Duffey and his associates, appellees. We have found nothing in the contracts tending definitely to show that Duffey, or appellees, should be paid out of the oil runs. There is a provision in the contract to the effect that either party shall have a lien upon all of the production belonging to the party in default, and that upon notice of non-payment, the pipeline or purchaser of the oil run from said wells shall be held insofar as the interest of the defaulting party is concerned until such time as the other party is satisfied. There is no provision in the contract, or in the exhibits in the record, between the parties, so far as we have observed, and none pointed out, that provides for the application by either party of the oil runs to the discharge of the expense account.

■ The court excluded as evidence a letter of date May 29, 1935, written by H. B. Masterson, President of appellant company, written for and on behalf of appellant, to C. C. Duffey, and excluded much parol evidence offered by appellant referring to the subject matters contained in the letter. Without copying the letter or stating the evidence excluded, both the letter and the evidence referred to a pro rata share of the expense in completing other wells than the wells involved in this suit. There was no error in excluding the evidence.

The original lease between G. T. McClintic and others and F. W. Gilland on the south half of Section 206, the land leased, and upon which well No. 8 was drilled, provides for the drilling of offset wells when a well is drilled on adjacent land within 300 feet of any line of said property and producing as much as 100 barrels of oil per day for 30 days, 90 days thereafter being allowed for commencing the offset well.

The original lease between the same parties upon the north ½ of Section 206, upon which wells 6, 7 and 9 were drilled, contained no provision for drilling offset wells. The record does not show that any well was drilled within 300 feet of any line of the leased premises. The wells Duffey drilled were 330 feet from the line.

To the question: "At the time their well was finished and the time you started to drill your offset to it, do you know that at that time the International was draining your land?" C. C. Duffey replied: "I didn't know positively. You wouldn't know, I wouldn't know, God wouldn't know." Duffey testified that he did not wait 90 days before drilling his well; that one of his wells (No. 7) "don't directly offset the International wells;" that "we made an agreement with the International that if it was good, if it looked good and we got a nice well, an exceptional well, that if we drilled any more we were to stagger in order that the wells would hold longer and produce better." The evidence shows that the International wells are 330 feet from the line.

After qualifying, H. B. Masterson testified that the formation in the McClintic field was a tight lime; the drainage area is small as compared to a loose lime formation; that none of the wells of the International in that field would drain for at least two years.

Under the above provisions of the lease and contract, and the above evidence, appellant submits that issues should have been submitted to the jury for findings as to whether the land under lease was being drained of oil at the time each of the wells 6, 7, 8 and 9 were drilled; that it was error to submit the question finding whether it was necessary to drill said wells to prevent drainage; that the lease contract under which the wells were to be drilled provided the conditions or circumstances under which offset wells were to be drilled, there was no contract provision for an additonal well, and no well having been drilled within 300 feet of the leased property, it was error to submit issues as to the necessity of drilling the wells by reason of drainage.

■ Appellant, in its argument under the above proposition, insists that there is no evidence tending to show that the wells drilled on the adjacent land would have drained the oil from these leased lands, and hence no necessity is shown for the offset wells, and especially the well additional to the three wells, and for the cost of which, in part, this suit is brought. We cannot say there is no evidence showing the leased land would not have been drained by wells on the adjacent lands. Duffey, the man who drilled the wells in question, in answer to the question: "Do you know that at that time the International was draining your lands?" answered, "I didn't positively, you wouldn't know, I wouldn't know, God wouldn't know." Having drilled the wells the trial court and jury could well presume the witness knew the formation of the ground where the wells were actually drilled, and could speak as to the necessity for drilling the wells. True, the record, does not show that any well was drilled on adjacent lands within 300 feet of any line of the leased lands. However, the owner of the lease contemplated that the lands might be drained of the oil and contracted against it. We think the contract between appellant and appellees under the uncontroverted facts created a mining partnership in the operation of the oil and gas lease, and that appellees could exercise their own judgment as to the necessity of drilling the additional well. We have found no reversible error, and the case between appellant and appellees is affirmed.

As to assignment number 8, appellant's brief contains no statement from the record (as required by Rule 31) showing that

Duffey or his firm made a profit out of the drilling operations.

In the above considered branch of the case F. W. Gilland and Mrs. Ray F. Sharp were made defendants as claiming certain interests in the leases involved in the suit. In rendering the judgment in the case the trial court made the following finding and rendered the following judgment as to Gilland and Mrs. Sharp:

"It appearing to the court that defendants F. W. Gilland and Mrs. Ray F. Sharp have and own an oil payment out of the hereinbefore described land, which oil payment is fixed by a judgment of this court dated June 14, 1932, and entered in cause No. 218; and it appearing to the court that such oil payment of the said F. W. Gilland and Mrs. Ray F. Sharp does not commence to operate until certain payments out of oil have first been satisfied, which payments are shown and referred to in the judgment of this court in said cause No. 218; and it appearing to the court that said interest owned by said F. W. Gilland and Mrs. Ray F. Sharp is not subject to the claim asserted by plaintiffs in this cause, but that when said payment out of oil to the said F. W. Gilland and Mrs. Ray F. Sharp commences to operate, same is subject to one-half of all maintenance and drilling expenses incurred after that date in connection with the hereinbefore described two oil and gas leases insofar as they cover the hereinbefore described land:

"It is, therefore, ordered, adjudged and decreed that plaintiffs take nothing as against defendants F. W. Gilland and Mrs. Ray F. Sharp, and that the interest of the said F. W. Gilland and Mrs. Ray F. Sharp in the hereinbefore described land be, and is hereby decreed to be as stated in the preceding paragraph hereof."

From the above judgment W. M. Storey, J. F. Friebele and C. C. Duffey, a copartnership doing business under the name of Storey-Friebele-Duffey Oil Company, as plaintiffs in error, prosecute this appeal against Houston & West Texas Oil Company, H. B. Masterson, F. W. Gilland and Mrs. Ray F. Sharp, a feme sole, as defendants in error. We will refer to plaintiffs in error as plaintiffs and to defendants in error as defendants.

Plaintiffs assert that they and defendants, Houston & West Texas Oil Company and H. B. Masterson were mining partners in the oil properties involved in this suit, and were charged respectively with ½ of the cost of drilling wells thereon, the ½ interest owned in such oil properties by defendants Houston & West Texas Oil Company and H. B. Masterson, being subject to certain payments payable, among others, to defendants F. W. Gilland and Mrs. Ray F. Sharp; that plaintiffs as managing partners and in order to comply with certain contracts, had drilled certain necessary wells, Nos. 6, 7, 8 and 9, on such oil properties and paid all of the costs of the same, the defendants Houston & West Texas Oil Company and H. B. Masterson having failed to pay their ½ of such costs.

By said suit plaintiffs sought to recover from defendants Houston & West Texas Oil Company and H. B. Masterson such ½ of the costs advanced in behalf of such defendants, amounting, with interest, to the sum of $58,359.19, and sought to have a lien declared in their favor for such an amount on the ½ interest in such oil properties owned by defendants Houston & West Texas Oil Company and H. B. Masterson, and on the interest therein owned by defendants F. W. Gilland and Mrs. Ray F. Sharp, and to have such lien foreclosed against all of such parties.

As shown in the other branch of the case with which this case has been consolidated, the jury found that it was necessary for plaintiffs to drill each of the wells involved in order to prevent drainage of which the parties knew, and of the expenses incurred, and that such expenses were fair and reasonable, and the trial court and this court in considering the issues involved have concluded that plaintiffs have a lien on the interests of the other defendants and ordered such lien foreclosed, but the trial court refused the plaintiffs a lien and foreclosure as to defendants Gilland and Mrs. Sharp, and from that part of the judgment refusing plaintiffs a lien and foreclosure plaintiffs prosecute this appeal and assign errors. The errors assigned are to the holding of the court to the effect that plaintiffs have no lien against the interests of defendants Gilland and Mrs. Sharp as briefly expressed in the judgment stated above, but more fully stated in the agreement and judgment in the record to which we refer, but from its length we do not copy at length.

The judgment rendered and entered in cause No. 218, and to which reference is made, we think, controls. We are not called upon to set aside or modify that judgment. Whatever it provides is final

and is fully set out in the statement of facts. It provides:

1. That plaintiffs Storey-Friebele-Duffey Oil Company recover of Houston & West Texas Oil Company, Masterson, Mrs. Sharp (then Mrs. Kahn) and Gilland an undivided ½ interest in and to the oil and gas leasehold interest in the property involved, and that this recovery is full and complete as against all of the defendants.

2. That plaintiffs recover from the same defendants the sum of $23,994 to be paid out of ¼ of ⅞ of the oil runs from the leases described after the deductions stated, the proceeds credited as stated, with interest as stated.

3. That ¼ of ⅞ of the oil runs from the leases to be paid to Keck Investment Company, Superior Oil Company, in accordance with division orders on file.

4. That an undivided ½ interest in and to the ⅞ working interest in and to the leases belonging to Houston & West Texas Oil Company, subject to the payment of the indebtedness due plaintiffs, as above, said payments to be made out of oil runs only and subject to payments herein directed to be made as in number 3 above, and subject to the remainder due to Mrs. Sharp and Gilland, in accordance with the contract between the parties on file in this case, and that the moneys derived therefrom shall be paid as above directed, but when the payments out of the ¼ of ⅞ of the production from said leases, less operating expenses, shall have discharged all indebtedness now owing plaintiffs, then Mrs. Sharp and Gilland shall be entitled to receive, and there is "hereby apportioned to them," all of the oil runs from ¼ of the ⅞ working interest, less ½ of operating expenses, to be credited upon the indebtedness of Masterson to Gilland and Mrs. Sharp until the same shall be discharged by the oil runs, or by him, at which time said oil runs shall be apportioned to the Houston & West Texas Oil Company, its successors and assigns. In the event Gilland and Mrs. Sharp have not been satisfied before the obligation to Keck Investment Company and Superior Oil Company have been discharged by the oil runs then and in that event, all of ½ of the ⅞ working interest, less ½ of the operating expense, shall be applied to the payment of the remainder due from Masterson and Gilland and Mrs. Sharp until the said obligation of Masterson to them has been satisfied.

We understand from the opinion of counsel, expressed in the argument, that the cost of the wells necessary to be drilled to protect from drainage was considered "operating expenses." If so, and so considering it, and if the partnership lien or other lien attached in favor of plaintiffs by reason of the failure of the defendant Houston & West Texas Oil Company to pay its ½ out of its interest, then necessarily the logic of the situation would seem to be that plaintiffs having paid the whole of the expense, their demand would be superior to the claims of Gilland and Mrs. Sharp, and they would be necessary parties to the foreclosure proceedings, and plaintiffs would have a right to a judgment decreeing that any interests Gilland and Mrs. Sharp might have which were to be paid out of future oil runs from the leases should be held subordinate to any judgment plaintiffs might obtain; otherwise, should a forced sale of the interest of the Houston & West Texas Oil Company be made the purchaser at such sale would then have a controversy with Gilland and Mrs. Sharp, the same as is here, as to any interest they might have in any future oil runs. As we construe the lengthy contract, much of which we have not embraced in this statement, the interests of Gilland and Mrs. Sharp are dependent interests—dependent upon the preservation of the present interest of Houston & West Texas Oil Company, for when the superior interest, upon which defendants' interests depend, goes out, their interest necessarily go with it. As we view the situation as disclosed by the entire record, the interests of Gilland and Mrs. Sharp are subject to ½ of the operating expenses, and their interests, though expressed at present, but operating in the future, are subject to the liens attaching before the time their interests attach or begin to operate.

This last considered of the consolidated cases as to Gilland and Mrs. Sharp denying plaintiffs a lien against their interests in the oil and gas leases, is reversed and judgment is here rendered in favor of plaintiffs that plaintiffs have a lien against the interests of said defendants, and against the interest of the Houston & West Texas Oil Company and Masterson for ½ of the expenses incurred by plaintiffs, as found by the jury in drilling, equipping and completing the wells, and that plaintiffs have a foreclosure of such lien.